UNITED STATES of America

v.

Terry Ray LEWIS.

Nos. 893CR259T23B, 897CV1272T23B.

United States District Court,
M.D. Florida,
Tampa Division.

Aug. 7, 2001.

James A. Muench, Asst. U.S. Atty., Tampa, FL, for Plaintiff.

Susan Hartmann Swartz, Law Office of Stanley R. Swartz, Bradenton, FL, for Defendants.

## ORDER

MERRYDAY, District Judge.

Pursuant to 28 U.S.C. § 2255, Terry Ray Lewis moves to vacate, set aside, or amend a sentence entered consequent upon his convictions for (1) conspiracy to manufacture, to possess with the intent to distribute, and to distribute cocaine base; (2) possession with the intent to distribute 50 grams of more of cocaine base; (3) possession with the intent to distribute cocaine; and (4) possession of a firearm in relation to an offense under 21 U.S.C. §§ 841 and 846 in violation of 18 U.S.C. § 924(c). Lewis also attacks the order of forfeiture entered consequent upon his convictions.

 Lewis alleges with respect to each of his claims that, by failing to assert the substance of the arguments that Lewis raises in his motion, Lewis' counsel was ineffective to the extent that counsel's performance deprived Lewis of his right under the Sixth Amendment to effective representation of counsel. Of course, this claim is measured by the familiar standard elaborated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which requires a demonstration by a movant (1) that counsel performed inadequately as measured by an objective standard of reasonableness and (2) that counsel's inadequate performance actually prejudiced the movant. In other words, *Strickland* requires a reasonable probability that, if counsel had performed in accordance with the applicable standard, the results of the proceeding would have differed. A movant must establish satisfactorily both elements of *Strickland;* if either element is unsatisfied, the motion fails to establish a deprivation of the right to effective counsel. *Bottoson v. Moore,* 234 F.3d 526, 532 (11th Cir.2000) ("a failure with respect to either prong constitutes a failure to demonstrate ineffective counsel").

### I.

Lewis' first basis for relief is that a witness' testimony at trial violated 18 U.S.C. § 201(c)(2). Lewis initially cited *United States v. Singleton,* 144 F.3d 1343 (10th Cir.1998), and *United States v. Lowery,* 15 F.Supp.2d 1348 (S.D.Fla.1998), in support of this argument. However, as Lewis concedes, these precedents are reversed in *United States v. Singleton,* 144 F.3d 1343 (10th Cir.1998), *cert. denied,* 527 U.S. 1024, 119 S.Ct. 2371, 144 L.Ed.2d 775 (1999), and *United States v. Lowery,* 166 F.3d 1119 (11th Cir.1999), *cert. denied,* 528 U.S. 889, 120 S.Ct. 212, 145 L.Ed.2d 178 (1999), respectively. For the reasons stated in *Singleton* and *Lowery,* this argument is rejected.

### II.

 Lewis' second claim arises under 18 U.S.C. § 3161(b), which provides that an indictment "charging an individual with the commission of an offense" must be filed within thirty days after the defendant is arrested or served with a summons "in connection with such charges." Lewis was arrested on September 22, 1993.[1] A crimi-

1. Under the Speedy Trial Act, including Section 3161(b), a defendant is not "arrested" for purposes of measuring applicable times until formal charges are filed. *United States v. Sanchez,* 722 F.2d 1501, 1509 (11th Cir.1984).

nal complaint issued on September 23rd, charging Lewis with possession with the intent to distribute fifty grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1). (Doc. 2) The indictment followed on September 24th and contained in its sole count the violation of Section 841(a)(1) recited in the complaint. (Doc. 5) The superseding indictment, on which Lewis was tried, issued on March 1, 1994, and added counts alleging conspiracy in violation of 21 U.S.C. § 846, possession of cocaine with the intent to distribute, and possession of a firearm in violation of 18 U.S.C. § 924(c). Lewis asserts that the superseding indictment offends Section 3161(b) because more than thirty days elapsed between the arrest and the superseding indictment. Lewis asserts that his counsel was ineffective because of the failure to raise this alleged defect.

■ In support of this argument, Lewis relies heavily on *United States v. Palomba*, 31 F.3d 1456 (9th Cir.1994), in which the defendant alleged ineffective assistance of counsel based upon counsel's failure to raise the Speedy Trial Act. In *Palomba*, a complaint was filed on April 10, 1990, and a warrant issued on April 11th. Palomba was arrested on April 12th and charged with false statements, mail fraud, and conspiracy under 18 U.S.C. §§ 1001, 1341, and 371, respectively. An indictment was filed on April 20th, charging Palomba with one count of conspiracy to defraud and one count of false statements under 18 U.S.C. §§ 371 and 1001, respectively. The indictment omitted the mail fraud charges alleged in the complaint that resulted in Palomba's arrest. Palomba initially appeared on May 15th and arraignment followed on May 17th. After some postponements, the district court scheduled a trial for July 30th. On July 13th, the United States filed a superseding indictment that

(1) charged Palomba with two counts of mail fraud (the charge that appeared in the complaint but not in the initial indictment), (2) charged Palomba for the first time with wire fraud in violation of 18 U.S.C. § 1343, and (3) again charged Palomba with false statements under 18 U.S.C. § 1001, a charge appearing in both the complaint and the initial indictment. Palomba moved for a continuance because of the need for additional trial preparation, and the trial was continued until October 30th, at which time the defendant was convicted on all counts. The conviction and sentence were affirmed. *United States v. Palomba*, 972 F.2d 1346 (9th Cir.1992).

Palomba sought relief under 28 U.S.C. § 2255 and alleged, in pertinent part, that counsel was ineffective for failing to seek dismissal under 18 U.S.C. § 3162(a)(1) of the allegations of mail fraud in the superseding indictment because, in violation of 18 U.S.C. § 3161(b), those charges, which were included in the complaint but excluded from the initial indictment, were brought more than thirty days after Palomba's arrest. The Ninth Circuit explicitly stated the basis for agreeing with Palomba that his counsel was ineffective for not seeking dismissal of the mail fraud charges that appeared in the complaint but not in the initial indictment:

> Under Sections 3161(a) and 3162(b), the government may prosecute a defendant accused in a complaint and untimely charged in a subsequent indictment when the respective offenses are punishable under different statutes, despite the fact that they arose from the same criminal transaction.... By the same token, where as here, the charges in the complaint and a later indictment are brought under the same statute, such

In Lewis' case, the small difference in time between Lewis' initial arrest and his formal "arrest" pursuant to the criminal complaint results in no legal consequence.

charges shall be dismissed under Section 3161(b), absent substantial discrepancies in time, place and manner between the underlying criminal episodes "apparent on the face of the complaint." [United States v.] *Pollock*, 726 F.2d at 1462. In short, the superseding indictment charged Palomba in an untimely manner with an offense which was contained in the complaint but which was not preserved against Section 3162(a) dismissal either by such facial factual differences or by inclusion in the timely original indictment. Accordingly, defense counsel erred in failing to move for dismissal of the mail fraud charges untimely raised in the superseding indictment under Section 3161(c) of the STA.

972 F.2d at 1464.

In other words, *Palomba* interprets Sections 3161(b) to require that, within thirty days after a defendant is arrested or a summons is issued based upon a charge in a complaint, the United States must file an indictment that includes the charge on which the arrest or the summons is based. Simply stated, *Palomba* requires that, when a complaint is filed and the defendant is arrested or a summons is issued based on a charge, the United States must indict the defendant on that charge within thirty days, or that charge is subject to dismissal if presented for the first time in an indictment filed more than thirty days after the arrest or issuance of the summons. *Palomba* requires only that, if a defendant is arrested or a summons issued based on a charge, the United States must file an indictment including that charge, if at all, within thirty days. *Palomba* teaches nothing about a superseding indictment and nothing about an indictment based upon charges not in the complaint and not

the basis of either a defendant's arrest or the issuance of a summons. In any event, the charge in the criminal complaint against Lewis (possession with the intent to distribute fifty grams or more of cocaine base) appears in both the timely initial indictment and again in the superseding indictment. *Palomba* is distinctly inapposite to the history of Lewis' arrest and indictment.[2]

Lewis also relies on *United States v. Van Brandy*, 563 F.Supp. 438 (S.D.Cal. 1983), in which the defendants were arrested at or near the scene of an attempted bank robbery. The original indictment of August 25, 1982, charged each of the three defendants with conspiracy to rob a bank under 18 U.S.C. §§ 2113(a) and 371 and attempted bank robbery under 18 U.S.C. § 2113(a). On December 10, 1982, "the Friday before trial," the grand jury returned a superseding indictment that added three counts (Counts 3, 4, and 5; one as to each defendant) for possession of a firearm by a felon in violation of 18 U.S.C. § 1202(a)(1) and added one count (Count 6, as to all three defendants) for carrying a firearm during the commission of a felony in violation of 18 U.S.C. § 924(c)(2). Because the defense was unprepared to proceed with respect to the superseding indictment, the district court severed the new counts and proceeded to trial on the original counts of the indictment. After a mistrial and other matters not pertinent to Lewis' claims, the defendants were convicted on Counts 1 and 2, leaving only the issue of the disposition of the severed claims, Counts 3 through 6.

*Van Brandy* discusses the defendant's assertion that Counts 3 through 6 were barred by 18 U.S.C. § 3161(b) because

---

**2.** *United States v. Bailey,* 111 F.3d 1229, 1236 (5th Cir.1997), distinguishes *Palomba* in footnote 6 and adopts persuasively the formula that Section 3161(b) and the dismissal provision of Section 3162(a)(1) require "dismissal of only those charges contained in the original complaint."

more than thirty days elapsed after the defendant's arrest and before the superseding indictment was filed. *Van Brandy*'s precise conclusion is unclear, except that the district court noted (1) that the prosecution "had resulted in several irregularities" that "in the context of the Speedy Trial Act, cast doubt upon the propriety of Counts 3 through 6" and (2) "that the concerns evidenced by Congress in the passing of the Speedy Trial Act are present in this case." 563 F.Supp. at 440. Relying on these perceived "irregularities" and "concerns," the court dismissed Counts 3 through 6, explaining that, although the United States was correct that the government enjoys "total discretion in the timing of indictments, . . . this court . . . feels a balance must be struck between that discretion and the rights of defendants." 563 F.Supp. at 440. The district court then offered the ambiguous explanation that, in instances in which the United States possesses information on which to base a superseding indictment but includes fewer than all the charges in the initial indictment, "this court feels the government must offer some valid explanation for its delay" and, absent a satisfying explanation, "this court feels it has authority to dismiss." 563 F.Supp. at 441. The district court dismissed Counts 3 through 6 with prejudice, noting the "unusual and unique circumstances" attendant to the case.

*Van Brandy* admittedly presents unusual facts (and certainly an unusual result) and should be limited in precedential value, if any, to those facts. *Van Brandy* is not supported by precedent and relies on little, if any, authority in resolving the issues, invoking instead an array of "irregularities," "concerns," "unusual and unique circumstances," "context," and how "this court feels." At most (assuming for a moment *Van Brandy* is correct), *Van Brandy* demonstrates the inherent authority of the court to regulate pleading in

cases of inexcusably dilatory tactics or the like. *Van Brandy* will not stand for the proposition that a superseding indictment, including charges related to the charge in the criminal complaint, cannot issue more than thirty days after an arrest or the issuance of a summons.

■ *Van Brandy* cites (but dismisses) *United States v. Wilks*, 629 F.2d 669 (10th Cir.1980), and some of the other cases that gravitate forcefully against the conclusion at which *Van Brandy* arrives. *See, e.g., United States v. Orbino*, 981 F.2d 1035, 1037 (9th Cir.1992) ("A superseding indictment issued before the original indictment is dismissed may issue more than thirty days after the arrest. [citation omitted] Not all charges must be filed within the first thirty day period. [citation omitted]"). However, *Van Brandy* ignores the force of this precedent. In effect, *Van Brandy* precariously enlarges into a statute of limitations a provision intended only to guarantee that a charge specified in a complaint results in an indictment within thirty days after the government procures an arrest or summons based on the charge specified in the complaint. Section 3161(b) incorporates the common sense notion that the United States must promptly, if at all, indict an arrestee on the charge that resulted in the arrest. As stated in *United States v. Wilson*, 762 F.Supp. 1501, 1501–02 (M.D.Ga. 1991):

> Considered as a whole, the Speedy Trial Act guarantees in § 3161(b) that an arrested individual will be indicted within thirty days of his arrest and then tried within a specified period of time calculated in accordance with the Act. On the other hand, the Speedy Trial Act does not guarantee that an arrested individual indicted within thirty days of his arrest must, in that thirty-day period, be

indicted for every crime known to the government, failing which he may never be charged. In short the Speedy Trial Act is not a statute of limitations.

In *United States v. Mosquera*, 95 F.3d 1012 (11th Cir.1996), the defendant was indicted on November 3, 1994, and arrested on November 8, 1994, for conspiracy to possess with the intent to distribute cocaine in violation of 21 U.S.C. § 846. On March 23, 1995, following a mistrial, the United States filed a superseding indictment, which retained the Section 846 charge of conspiracy and added charges alleging possession with the intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 and use of a communication facility in violation of 21 U.S.C. § 843(b). Affirming the district court and citing *Wilson,* the circuit court stated that, "A superseding indictment that issues more that 30 days after the arrest, but before the original indictment is dismissed, does not violate § 3161(b)." 95 F.3d at 1013.[3]

Lewis was arrested at Calloway's residence on September 22nd, and a complaint issued the next day based on Section 841(a)(1). Lewis was indicted the next day, September 24th, and the indictment includes the charge on which Lewis was arrested. The superseding indictment contains additional charges and retains the charge that supported the criminal complaint and that appears in the initial indictment. The Section 3161(b) issue raised by Lewis is without merit, supported neither by the history of the charges against Lewis, the language of the applicable statute, nor persuasive and authoritative precedent. Lewis' counsel was not ineffective for failing to raise this flawed argument.

---

3. Section 3161(b) states in part:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

Section 3161(b) apparently causes confusion, arising in part from the phrase "in connection with." A closer examination is warranted. Section 3161(b) deals exclusively with a charge "on which" a defendant was arrested or a summons issued ("the charge of arrest"). Section 3161(b) fixes a time limit and requires formalization of the charge of arrest by an indictment or information filed within thirty days after the arrest or the issuance of a summons "in connection with such charges." [Actually, the thirty days begins the day after the day of arrest. *United States v. Skanes,* 17 F.3d 1352 (11th Cir.1994).] "Such charges" means only the charge(s) of arrest. The phrase "in connection with" describes the relation between the arrest and the charge of arrest, i.e., the statutory thirty days commences when the defendant is arrested "in connection with" the charge of arrest. Section 3161(b) requires that an indictment or information consequent upon the charge of arrest follow the arrest within thirty days or not at all. Even if applicable, Section 3161(b) bars no charge other than a charge of arrest. Even if applicable, Section 3161(b) does not bar additional charges "in connection with" the charge of arrest. Section 3161(b)'s "in connection with" language extends only to "an arrest in connection with a charge" but not to "a charge in connection with a charge of arrest." In other words, Section 3161(b) does not preclude the later filing of any charge "in connection with" the charge of arrest; Section 3161(b) precludes only, in applicable circumstances, the delayed filing of the charge of arrest, i.e., the charge "in connection with" which the arrest occurred. In ordinary terms, "if you arrest him for it, you have thirty days to charge him with it—or forget about it." Section 3161(b) says only that, notwithstanding one or two inviting mirages lurking near the horizon. The somewhat latent ambiguity in Section 3161(b) has created some mischief in the courts and should be avoided. Section 3161(b) bars no charge at any time, except, if Section 3161(b) is applicable, a charge of arrest included for the first time in an indictment or information filed more than thirty days after the arrest based on that charge.

### III.

■ Lewis' third claim asserts that his counsel was ineffective for failing to argue in the district court or in the circuit court of appeals that the "warrantless security sweep of Lewis' residence ... could have invalidated the warrant subsequently issued." (Doc. 193 at 8) However, in the district court Lewis' counsel interposed a motion to suppress (Doc. 35), the United States responded (Doc. 38), and Lewis followed with another memorandum in reply (Doc. 40). Magistrate Judge Thomas B. Wilson recommended denial of the motion.

A review of the pertinent papers and other matters of record reveals a well-established history. On September 22, 1993, and pursuant to a warrant, law enforcement searched Calloway's residence at 8417 North Greenwood. This warrant issued consequent upon reports from a confidential informant. Magistrate Judge Wilson found in his "Report and Recommendation" that, "[a]s the officers announced themselves at the front entrance, the defendant ran to a rear bedroom and dove head first out a window. Both he and Calloway were arrested, and one kilogram of cocaine and $10,000 were seized." (Doc. 41 at 1) Of course, Lewis was hospitalized for treatment of the wounds he received when he crashed through the rear window of the residence in response to law enforcement's announcement at the front door. Magistrate Judge Wilson further explains the events pertinent to Lewis' third claim:

> Calloway cooperated with the authorities and provided information indicating that the defendant stored cocaine at his residence at 5017 Cluster Street in Hillsborough County. The officers then obtained a state warrant for the Cluster Street house. Upon execution of the search warrant, the officers seized, among other things, approximately one kilogram of crack cocaine, approximately three kilograms of powder cocaine, drug paraphernalia, a hand gun, and drug records.

(Doc. 41 at 1–2)

Magistrate Judge Wilson evaluated the circumstances of the search of Lewis' Cluster Street residence and established the incontestable relation between the arrest of Calloway at Calloway's residence and the search at Cluster Street:

> In the first place, the defendant attempted to flee when the authorities executed the search warrant at Calloway's residence. The drugs and money found at that location, coupled with the defendant's flight, provided strong evidence that the defendant was involved in drug transactions.
>
> Further, Calloway told the authorities that he was the defendant's middleman; that he knows that the defendant resides at 5017 Cluster Street; that he has seen the defendant making rock cocaine at that location; that the defendant had left Calloway's residence earlier in the day with two kilograms of cocaine, but had returned with only one; that the defendant told Calloway he had the other kilogram; and that, if the defendant had any cocaine, it would "in all likelihood" be kept at the Cluster Street residence. The Government correctly points out that this information was reliable because it was contrary to Calloway's penal interest; it was so detailed as to be self-corroborating; and it was consistent with information received from two confidential informants, one of whom has stated that he or she was present on numerous occasions when drug transactions were completed at 5017 Cluster Street.
>
> The defendant, noting that the affidavit contains information from confidential informants, challenges the reliability of that information. *But contrary to the*

*defendant's argument, the affidavit was not predicated on the unverified statements by confidential informants. Rather, it was based upon the defendant's conduct at the search of Calloway's residence, and upon Calloway's information to the authorities.* The information from the confidential informants, however, did add to the total weight of the showing of probable cause. *In my view, the question of probable cause in this case was not even close.* The information before the state judge plainly justified the issuance of the search warrant.

(Doc. 41 at 3–4) (emphasis added)

Magistrate Judge Wilson concluded quite properly that Lewis' arrest arose proximately from the events at Calloway's residence. The officers' announcement of their presence at Calloway's door in preparation for a search of Calloway's residence prompted Lewis, a former high school and college football player, recklessly and injuriously to fling his body through a glass window in the rear of the residence in an attempt to escape. The search yielded all the anticipated proceeds: drugs, guns, money, and drug paraphernalia. Of course, as he did in his testimony at trial, Calloway openly provided the police details that implicated Lewis persuasively.

Lewis contends that no legal attack was launched in Lewis' behalf challenging the "security sweep" of his residence on Cluster Street and seeking to suppress the proceeds of the subsequent search based upon the warrant. However, as the Magistrate Judge observed:

> It is appropriate to note that the defendant alleges that a warrantless, security sweep of the premises was conducted (Doc. 5, p. 3). He makes no argument based upon this allegation, however. Furthermore, there is plainly no information in the affidavit that derives from such a sweep. Accordingly, even if the alleged security sweep were improper, that would not support suppression of the seized evidence. *Murray v. United States,* 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988); *Segura v. United States,* 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984).

(Doc. 41 at 5) In other words, the record reveals that Lewis' counsel attacked unsuccessfully the September 23, 1993, search of Lewis' residence and the "security sweep" that preceded. Lewis' motion to suppress refers to the "security sweep" and objects on Fourth and Fourteenth Amendment grounds, among others. (Doc. 35 at 5–6) Lewis' attack was predictably unsuccessful because (1) the "security sweep" played no part in Lewis' arrest or the issuance of a warrant to search his premises on Cluster Street and (2) the weight of the evidence contributing to the determination of probable cause at pertinent stages of the inquiry was satisfactory by a comfortable margin. Lewis' third claim for relief is without merit.[4]

---

4. In Lewis' supplemental reply (Doc. 197), Lewis relies additionally on *United States v. Dawkins,* 17 F.3d 399 (D.C.Cir.1994), in which a confidential informant's tip resulted in a police visit to the defendant's apartment. On the first visit, the defendant did not respond to the officers' knocks at his door. After the officers left, the informant called police again to confirm the defendant's presence at the apartment. Calling again, the police obtained a key from an occupant, who was later identified as the defendant. Upon entering the apartment, the police saw contraband in plain view. A warrant was obtained based upon the informant's tip and the contraband observed when the police entered the apartment.

*Dawkins* is readily distinguishable. In *Dawkins,* the search warrant relied on, or at least included in the determination of probable cause, the fruits of the initial warrantless but consensual search. In the instant case, *the "security sweep" at Lewis' residence resulted in no information that contributed to procuring the search warrant authorizing the subsequent search of Lewis' residence.* The warrant in the instant case depended *solely*

## IV.

■ Lewis directs his fourth argument at the forfeiture of money and other property in conjunction with this proceeding. Undoubtedly, any putative error in the forfeiture aspect of this case was reviewable on appeal, assuming that some order of the court resulted in that error (the motion fails to identify any alleged judicial error). Apparently, no error regarding the forfeiture was asserted in either the district court or the circuit court. Lewis fails to specify the nature of the alleged error. Accordingly, Lewis neither presented nor preserved this unstated error at any proper and necessary moment in the history of this case.

The present proceeding is consequent upon Section 2255. The relief available is prescribed by statute, as elaborated in pertinent precedent. Lewis states no plausible basis on which to address forfeiture issues in a Section 2255 motion. Neither does Lewis explain how a forfeiture issue creates a claim of ineffective counsel sufficient to trigger his access to Section 2255 relief. Although Lewis now or in the past might have enjoyed some remedy, including a right to appeal, against the state or the United States if property was seized unlawfully, that remedy is not a proceeding under Section 2255 in the circumstances this case presents. *United States v. Patton,* 91 F.3d 157 (9th Cir.1996).

## V.

■ Finally, Lewis seeks leave to amend his Section 2255 motion to assert that his counsel was ineffective because of the failure to appeal from the district court's denial (Doc. 98 at ¶ 9) of Lewis'

motion to disclose the identity of the confidential informant (Doc. 79), which motion was opposed by the United States (Doc. 97). Lewis' motion arises from *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), which prescribes the circumstances that warrant disclosure to a defendant of the identity of a confidential informant. In general, a defendant's right to the identity of a confidential informant depends upon (1) the extent of the informant's participation in the criminal activity, (2) the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant, and (3) the government's interest in nondisclosure. *United States v. Rutherford,* 175 F.3d 899 (11th Cir.1999); *United States v. McDonald,* 935 F.2d 1212 (11th Cir.1991); *United States v. Gutierrez,* 931 F.2d 1482 (11th Cir.1991); *United States v. Tenorio–Angel,* 756 F.2d 1505 (11th Cir. 1985). The familiar "abuse of discretion" standard applies to appellate review of the denial of a motion to disclose the identity of a confidential informant. *United States v. Parikh,* 858 F.2d 688, 696 (11th Cir. 1988).

In this instance, Lewis refers to and attaches to his motion as an exhibit the trial testimony (or a small portion of it) of Special Agent Tim Spears of the Drug Enforcement Administration, who discusses the events at Calloway's residence the evening of Lewis' and Calloway's arrests. [In this instance and others, Lewis' motion contains insufficient citations to the record. Agent Spears' testimony is in Volume II of the trial transcript (Doc. 147), beginning at page 29, to which, in this order, the record

---

on Lewis' bizarre exit from Calloway's residence as the police entered the front door, the physical evidence in Calloway's residence and Lewis' rental car, and the confidential information from Calloway (as the Magistrate Judge specifically determined). *See, e.g., United States v. Hassan,* 83 F.3d 693, 698

(5th Cir.1996) (which distinguishes *Dawkins* and, relying on the "independent source doctrine," sustains a search if "independently-acquired information provided sufficient evidence to establish probable cause for the issuance of a search warrant"). *Dawkins* provides no support for Lewis' claim.

citation "Spears" refers.] Spears' testimony specifies the details of the surveillance of Calloway's residence, the arrest of Calloway and Lewis, the "security sweep" at Lewis' residence, the acquisition of a search warrant, and the execution of the warrant at Lewis' residence.

Agent Spears establishes that in September, 1993, law enforcement utilized a previous arrestee as a confidential informant and learned about drugs that were available through Calloway. Spears and others caused the informant to initiate tape-recorded, "controlled telephone calls" to Calloway in an effort to purchase cocaine. (Spears at 30) These calls served to partially corroborate the informant's reports of cocaine and to provide an opportunity to arrest individuals supplying the seller. The informant's call resulted in the informant's visit to Calloway's North Greenwood residence on September 22nd in conjunction with law enforcement. The informant was instructed to page the awaiting police when he actually saw the cocaine so that the nearby police could promptly execute the search warrant by reporting immediately to the front door of Calloway's residence.

The informant entered the residence, saw the cocaine, and paged the police, who appeared at Calloway's door momentarily. When the police entered the residence, the informant and Calloway were present in the living room. (Spears at 38) Just a moment later, the officers heard "a large crash." (Spears at 40) A woman and a child (curled in the "fetal position" between the bed and the wall) were then located in a bedroom. The child told the officers that a man had just jumped through the window. (Spears at 42) The glass and the mini-blinds in the window were "knocked out completely." In addition to the woman and the child, Calloway's residence contained cocaine, drug paraphernalia (such as scales), and other matters described at length during the trial.

In the interim, officers outside Calloway's residence had retrieved the man who had leaped through the glass. This man, cut and bleeding, was Terry Ray Lewis, who now (apparently) argues that he was not present in the Calloway residence at the time the informant entered the residence, saw the cocaine, and paged the police. The police summoned an ambulance to attend to Lewis. (Spears at 58) Lewis was searched and car keys were found. The keys fit a rental car parked in the driveway of Calloway's residence. (Spears at 59) In the back seat of the car was a bag containing $10,505 in cash. (Spears at 61) On the passenger's side of the car, the police found a wallet that contained Lewis' credit card and Lewis' driver's license, a set of keys to Lewis' residence, and a garage door opener that controlled the garage door at Lewis' residence. (Spears at 64–65, 72) (Interestingly, except for the cash in Lewis' car, the police search of the Calloway premises yielded no unusual amounts of cash.) Law enforcement then visited Lewis' residence and, using the newly discovered garage door opener, conducted the "security sweep," which consisted of nothing more than ensuring that no one was in the residence and that the residence was untouched until a warrant was obtained, which occurred after midnight.

The consequent search of the Lewis residence revealed a large quantity of cash under the mattress in the bedroom and a loaded gun. As well, Agent Spears described another part of the search:

Q: And upon going to the garage, what if anything did you find out there?

A: Detective Olewinski brought my attention to a large garbage bag. And it was open. And as I looked inside the garbage bag there were

several wrappers, kilo wrappers, what I describe as a body belt for smuggling in cocaine into the country, baking soda and some other paraphernalia, paper towels, et cetera.

(Spears at 77) The garage also contained bricks of cocaine and a paint can full of crack cocaine that was discovered in a water cooler, which also contained some razor blades. (Spears 89–90, 92–96, 108) Inositol, a diluent typically used in the preparation of commercial cocaine, was located in a closet in the residence. (Spears at 109–13)

The request for the identity of the informant is measured by the factors enumerated in *Rutherford, McDonald, Gutierrez,* and *Tenorio–Angel.* First, in the history of this criminal episode, the confidential informant is insignificant. The informant played no role in Lewis' alleged crime (and played only a minor role in Calloway's crime). The informant merely telephoned Calloway (not Lewis) to arrange a purchase of cocaine at the behest of police and visited the seller to confirm the presence of the cocaine. The purchase never occurred. Admittedly, the informant was not quite a "mere tipster," but his role in these events is so inconsequential and subordinate that he is the equivalent of a "mere tipster," whose identity need not be disclosed. *United States v. Diaz,* 655 F.2d 580 (5th Cir.1981), *cert. denied,* 455 U.S. 910, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982). Neither was the informant the sole person, other than the defendant, who can testify to the crime. Calloway and others, including law enforcement, which was either present or nearby at relevant times, are able to testify about this episode. Unlike in *Roviaro,* the informant in Lewis' case is not an active co-conspirator with Lewis and Calloway; he is merely a supposed customer of Calloway (not Lewis). The evidence reveals no material relation between Lewis and the informant.

Second, the prospective testimony of the informant is unavailing to Lewis, who obviously was present in Calloway's residence at the pertinent time—he jumped through a pain of glass to try and get away. Only minutes elapsed from the time the informant entered Calloway's residence until the police came and Lewis jumped out through the window. No conceivable testimony from the informant changes any of the inculpatory facts established, for example, by Agent Spears and the physical evidence. What has the identity of the confidential informant to do with jumping through a window to escape the police, having $10,000 in cash in the back seat of a car, or storing bricks of cocaine and razor blades in a garage or inositol in a closet? The informant's testimony will not "significantly aid in establishing an asserted defense," and "mere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure." *United States v. Kerris,* 748 F.2d 610, 614 (11th Cir.1984).

Third, the interest of law enforcement in protecting informants is a material consideration, although certainly not a consideration entitled uniformly to decisive influence. No specific evidence in this record suggests an explicit threat to this informant; the inherent and constant exposure of an informant to acts of vengeance establishes the threat. Therefore, disclosure of an informant's identity usually requires some material showing of a testimonial advantage not available to the defendant through other witnesses. Absent that showing, disclosure is frequently denied in order (1) to preserve active and productive sources of information for law enforcement and (2) to protect cooperating persons from gratuitous exposure to revenge. Lewis' speculation about the informant's possible testimony offers no reasonable basis to require the informant at

his risk to appear and testify about an episode in which, in the company of others who have (or could have) testified, he played, at most, only a "bit part."

Lewis includes in the fifth claim, as well as in the third claim and in other parts of his motion, allusions to the prospect of another "Terry," who, Lewis suggests, is the person to whom the original confidential informant referred when "tipping" the police. This proposed second "Terry" is of no consequence to this matter. The confidential informant provided information, now confirmed, that Calloway and "Terry" would possess cocaine at a particular place (Calloway's residence) and at a particular time. The police procured a warrant and presented themselves at the door of Calloway's residence. At that moment and in a dramatic fashion, Lewis fled from the building by jumping through a window. After Lewis and Calloway were arrested, Calloway cooperated with law enforcement and provided evidence to the police that directly identified Lewis' role in felonious behavior and resulted in issuance of a warrant for the search of Lewis' residence. In response to this history, Lewis offers speculation about the existence of a second "Terry," allegedly named by the confidential informant. However, Lewis is convicted of this crime, without respect to an alleged second "Terry," because Calloway's and other testimony, the physical evidence, and Lewis' own behavior gravitated convincingly toward issuance of a warrant, arrest, and conviction. This chain of probable cause, which strengthened with each succeeding event, and this series of events led inexorably to conviction regardless of the prospect, real or fanciful, of a second "Terry."

In sum, Lewis seeks leave to amend to assert a fifth claim, in which Lewis argues that his counsel was ineffective because of the failure to appeal from the denial of his motion to disclose the identity of the informant. Because the motion was properly denied and because Lewis demonstrates no prejudice from his counsel's appellate decision on this point, this proposed fifth issue is without merit.

## CONCLUSION

For the preceding reasons, although Lewis is **GRANTED** leave to amend to include his fifth claim (Doc. 197), the motion pursuant to Section 2255 is **DENIED** (Docs. 172, 193, and 197).