UNITED STATES of America, Plaintiff-Appellee,

v.

Anthony RUTHERFORD, Defendant-Appellant.

No. 96-4520.

United States Court of Appeals,

Eleventh Circuit.

May 13, 1999.

Appeal from the United States District Court for the Southern District of Florida. (No. 95-451-CR-KMM), K. Michael Moore, Judge.

Before HATCHETT, Chief Judge, BARKETT Circuit Judge, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

Anthony Rutherford received three concurrent life sentences upon his conviction for conspiracy, possession and distribution of cocaine. 21 U.S.C. sections 846 and 841(a)(1). On appeal, he asserts several issues, only three of which we discuss here:

(1) Whether the district court should have ordered disclosure of the confidential informants' names. On this issue, we remand to the district court.

(2) Whether the government's notice of its intent to seek a statutory sentence enhancement under 21 U.S.C. section 851 was inadequate due to failure to specify the crimes it intended to rely upon. We hold that the government's notice was inadequate and therefore reverse the enhancement.

(3) Whether defendant was improperly classified as a career offender under U.S.S.G section 4B1.1 because of two Florida state convictions, one of which defendant asserts was not "violent." Based on prior authority of this court, we affirm the decision of the district court that held defendant to be such a career offender.

On the other issues argued on this appeal, we affirm without extended discussion:

(4) Whether the government proved that the cocaine involved in this case fit the sentencing guidelines' definition of "crack."

(5) Whether the sentencing guidelines' definition of "crack" is unconstitutionally vague.

(6) Whether the sentencing guidelines' definition of "crack" is so ambiguous that the district court should have disregarded the increased crack cocaine penalties pursuant to the rule of lenity.

(7) Whether the prosecutor's remarks at closing deprived defendant of a fair trial.

(8) Whether the government's proof and the court's instructions impermissibly resulted in a constructive amendment to the indictment.

*(1) Whether the district court should have ordered disclosure of the confidential informants' names.*

Rutherford alleges the district court abused its discretion in denying his request for disclosure of the names of two confidential informants. He claims that he was not at the scene of the drug transaction. He alleges the confidential informants could corroborate his defense that the government agents misidentified him as the suspect who brokered the drug deal.

The government has the privilege to withhold from disclosure the identity of its informants, but this privilege is limited. The Supreme Court in *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), which reversed a criminal conviction where the defendant had been denied access to a confidential informant, set forth a balancing test in which a court must take into account the particular circumstances of each case, the crime charged, possible defenses, and the potential significance of the informant's testimony. 353 U.S. at 62, 77 S.Ct. 623. If disclosure is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro,* 353 U.S. at 60-61, 77 S.Ct. 623. *See also United States v. Gutierrez,* 931 F.2d 1482 (11th Cir.), *cert. denied,* 502 U.S. 916, 112 S.Ct. 321, 116 L.Ed.2d 262 (1991); *United States v. Kerris,* 748 F.2d 610, 613-14 (11th Cir.1984).

A review of the facts shows that the confidential informants might be able to support Rutherford's defense that "it wasn't me." We note that Rutherford's first trial ended in mistrial, although a second jury convicted him on all counts.

Rutherford was the target of an undercover narcotics investigation involving federal law enforcement agents and local law enforcement in Miami, Florida. At a meeting of the various agents involved on March 28, 1995, detective Greg Darling of the Metro-Dade Police Department was instructed to pose as a drug dealer, meet with Rutherford and arrange for the purchase of three ounces of cocaine. Darling and the other agents involved, who had not known Rutherford previously, were shown a picture of Rutherford. After the briefing, Darling met with two confidential informants ("CI"s) who were intimately familiar with Rutherford as the result of prior drug deals with him. They had agreed to pose as boyfriend and girlfriend in arranging the transaction. With the male CI traveling in his own car followed by the female CI and Darling in a separate vehicle, they all went to 1700 NW 63rd Street, where the male CI met with a male later identified as Rutherford (the "suspect"). The suspect got into the male CI's car, and motioned for Darling to follow as they went to another location, NW 60th Street and 13th Avenue, where the suspect briefly spoke to a heavyset man, before the cars proceeded to a duplex at NW 50th Street and 5th Avenue. At the duplex, the suspect spoke with someone at the front door, and then went to Darling's car and said, "Come on man, my boy has it." Darling got out of his car and walked with the suspect to the duplex door.

Darling then counted out $2100 and gave it to the suspect who in turn gave it to the man at the door, Rutherford's co-defendant Jimmy White. White then gave the suspect three ounces of cocaine base and he in turn, gave it to Darling. As Darling walked away, the suspect asked, "Aren't you gonna break me off something for hooking you up?" Darling gave him nothing. The suspect walked away, and Darling and the CIs left in their cars.

Rutherford was not arrested until about three months after the transaction. Rutherford presented some evidence at trial in support of his "not me" defense in the form of testimony from his attorney, John Freeman, who represented Rutherford in a civil suit he had brought to recover money damages for an accident that had left him with an impaired left knee. Freeman testified that on the day of the drug deal, March 28, 1995, Rutherford and a friend visited Freeman in his office in Broward County at around noon and stayed

3

for about two hours. Freeman said that although Rutherford could walk, he did so with a clearly noticeable limp due to his recent accident. Darling testified that the briefing occurred at around noon and that he arrived at the drug deal location with the suspect between 4:30 and 5:00 p.m. Neither Darling nor the other law enforcement officer that identified Rutherford indicated that he walked with a limp.

It is apparent from these facts that there may indeed have been a misidentification in this case and that the informants were in a much better position to identify the man they took to the drug deal than the government agents who only met him there for the first time and identified him from a photograph.

Although Rutherford has established the direct relationship between his defense and the testimony sought, it is not appropriate to reverse the convictions at this time. Rather, the district court should determine what the testimony of the confidential informants would be. If that testimony would not support the misidentification defense, then there could be no reversible error in denying the motion to disclose.

> Under the circumstances, an in camera hearing will best accommodate the competing governmental and individual interests in this case. Upon remand, the district judge should question the informer in camera to ascertain whether his or her testimony might be of assistance to defendants.

*United States v. Panton,* 846 F.2d 1335, 1337 (11th Cir.1988).

We remand for an in camera hearing on this issue as prescribed in *Panton.* If the district court determines that the testimony would materially support the misidentification defense, then the convictions should be vacated and the defendants given a new trial. The government can then decide whether the interests served in resisting disclosure of the confidential informants are so great as to justify a dismissal of the charges against Rutherford, rather than disclose their identity in a retrial.

*(2) Whether the government's notice of its intent to seek a statutory sentence enhancement under 21 U.S.C. section 851 was inadequate due to lack of specificity.*

Section 841(b)(1)(A) prescribes enhanced sentences for recidivist drug offenders. To obtain an enhancement under section 841(b)(1)(A), however, the government must comply with the notice requirement of 21 U.S.C. section 851(a)(1), which provides that a recidivist enhancement may not be imposed for a jury conviction "unless before trial, ... the United States attorney files an information with the court (and serves

a copy of such information on the [defendant] or counsel for the [defendant] ) stating in writing the previous convictions to be relied upon."

In this case, the government concedes that it failed to list any prior convictions in its pretrial enhancement notice.[1] The government contends, however, that the admitted defect in the notice was cured because it did specifically list prior convictions in a contemporaneously filed notice of intent to introduce evidence of prior convictions at trial, and a later discovery response.[2]

Only one other circuit has addressed a similar issue. In *United States v. Belanger,* 970 F.2d 416 (7th Cir.1992), the Seventh Circuit upheld a section 841(b)(1)(A) enhancement when confronted with similar facts. The pretrial notice of enhancement in *Belanger* failed to specify the convictions on which the government sought to base the enhancement. 970 F.2d at 417-18. Subsequently, however, the government filed a notice stating that it intended to offer evidence at trial of the defendant's two prior state court felony drug convictions. 970 F.2d at 417-18. This notice described the prior convictions in detail. 970 F.2d at 418. The Seventh Circuit ruled that the later notice cured the defect of the first:

---

[1] Before trial, the government filed a notice of its intent to seek a sentence enhancement under 21 U.S.C. section 841(b)(1)(A). (R1-32). The notice contained three brief paragraphs:

> The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this notice of enhancement pursuant to Title 21, United States Code, Section 841(b)(1)(A).

> Should the defendant be convicted of the offenses charged in the Indictment, the government will seek enhancement of any sentence to be imposed pursuant to Title 21, United States Code, Section 841(b)(1)(A).

> The defendant therefore face [sic] a minimum mandatory term of life imprisonment without release, a fine of up to $8,000,000 and a term of supervised release of at least ten (10) years.

[2] (1) The government filed a notice of the government's intent to introduce evidence of prior crimes pursuant to Federal Rule of Evidence 404(b) at trial, which listed three prior drug convictions and (2) a notice of the government's intent to introduce evidence of prior crimes pursuant to Federal Rule of Evidence 609(b) at trial, which listed two prior drug convictions. Both were filed on the same day as the enhancement notice. A later discovery response included Rutherford's criminal record, police reports concerning his drug activity, and copies of the judgments from his prior drug convictions.

5

The government timely filed two notices which taken together signify its intent to seek an enhanced penalty. The first filing stated that a sentencing enhancement would be sought but did not provide which convictions would be used. The second filing, though submitted for different purposes, detailed those convictions. Section 851 does not specify the particular form which notice of enhancement must take and the government's filings provided Belanger reasonable notice and an opportunity to be heard. The notice given was sufficient to satisfy the statute.

970 F.2d at 419.

Relying on *Belanger,* the district court held that the insufficiency of the enhancement notice had been cured by the government's other filings, overruling Rutherford's objection to the enhancement on the ground that his argument was one of "form over substance."

Although this Court has never published any cases addressing a situation like the one presented in the instant case, we have required strict compliance with 21 U.S.C. section 851(a)(1). *See United States v. Weaver,* 905 F.2d 1466, 1481 (11th Cir.1990), *cert. denied sub nom.* 498 U.S. 1091, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991). We have ruled, for example, that the government's failure to file a timely section 851(a)(1) notice precludes enhancement even if the defendant knew before trial that he was subject to a sentence enhancement based on prior convictions. *See United States v. Olson,* 716 F.2d 850, 852 (11th Cir.1983); *United States v. Noland,* 495 F.2d 529, 533 (5th Cir.), *cert. denied,* 419 U.S. 966, 95 S.Ct. 228, 42 L.Ed.2d 181 (1974). We have also ruled that the government's failure to file a timely section 851(a)(1) notice precludes enhancement even if the defendant does not challenge the validity of his prior convictions. *See Noland,* 495 F.2d at 533.

Requiring a defendant to combine a vague enhancement notice with an unrelated pleading that is often filed without the purpose of sentence enhancement is inconsistent with strict compliance. There is no good reason why the uncertainty that will continue to pervade the procedure under the *Belanger* analysis should not be eliminated by simply requiring the government to comply with the requirements of the statute. Strict compliance would seem to be an easy thing for the government to do. Most defendants know of their own convictions. If that knowledge alone was sufficient to trigger the enhancement procedure, no kind of notice intended by Congress would have been required. The subsequent pleading does nothing more than

6

notify the defendant that the government also knows about the prior convictions. Nothing was filed to show which prior convictions, if any, the government intended to rely upon for enhancement purposes. This was the purpose of the notification statute.

It was reversible error to impose a mandatory life sentence on the defendant for two prior drug convictions which were not specifically listed in the notice required by section 851(a)(1).

*(3) Whether defendant was improperly classified as a career offender under U.S.S.G section 4B1.1 because of two Florida state convictions.*

The district court sentenced Rutherford as a career offender under U.S.S.G. section 4B1.1, which provides for an enhanced sentence if a defendant's criminal history reflects at least two prior felony convictions for either crimes of violence or crimes involving controlled substances. The question is whether the district court properly characterized one of Rutherford's predicate offenses as a crime of violence within the meaning of the guidelines. The other offense clearly qualified under the guidelines.

The disputed conviction was for lewd assault, in violation of section 800.04, Florida Statutes.[3] There is no indication in the Presentence Investigation Report or elsewhere in the record under which subsection he was convicted. We have held that in determining whether a conviction qualifies as a crime of violence, a court should look only to the elements of the convicted offense, and not to the conduct underlying the conviction. *See United States v. Lipsey,* 40 F.3d 1200, 1201 (11th Cir.1994) (conviction of defendant who pled guilty to possession with intent to distribute a controlled substance could be used for career offender purposes even though defendant denied intent to distribute).

Rutherford argues that the statute sets forth acts that would violate the statute which do not "encompass as an element the use, attempted use or threatened use of physical forces against" the victim. U.S.S.G. § 4B1.2. In *Ramsey v. INS,* 55 F.3d 580 (11th Cir.1995), however, we held that a conviction under section 800.04(1), Florida Statutes, is an aggravated felony for deportation purposes under 8 U.S.C. section

---

[3]A person who:

(1)     Handles, fondles, or assaults any child under the age of 16 years in a lewd, lascivious, or indecent manner;

(2)     Commits actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sadomasochistic abuse, actual lewd exhibition of the genitals, or any act or conduct which simulated that sexual battery is being or will be committed upon any child under the age of 16 years or forces or entices the child to commit any such act;

(3)     Commits an act defines as sexual battery under s.794.011(1)(b) upon any child under the age of 16 years;  or

(4)     Knowingly commits any lewd or lascivious act in the presence of any child under the age of 16 years,

> without committing the crime of sexual battery, commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s.775.084. Neither the victim's lack of chastity nor the victim's consent is a defense to the crime proscribed by this section. A mother's breast feeding of her baby does not under any circumstance violate this section.

Fla. Stat. § 800.04 (1993).

1251(a)(2)(A)(iii).  Under that section, attempted lewd assault would be an aggravated felony only if it constituted a crime of violence as defined in 18 U.S.C. section 16.  We then held that

> Although a violation of § 800.04 might be accomplished without the use of physical force, we conclude that the offense is a felony which involves a substantial risk that physical force may be used against the victim in the course of committing the offense.

55 F.3d at 583.  The Court then held that a violation of section 800.04(1), Florida Statutes, is a crime of violence as defined in 18 U.S.C. section 16.  *Ramsey,* 55 F.3d at 583.  Based on the Court's analysis, there is no substantial difference between section 800.04(1) and the other subsections of section 800.04, so the *Ramsey* decision would apply to any conviction under that statute.

There is no substantial difference that requires a different decision between the definition of a crime of violence under 18 U.S.C. section 16 ("crime of violence" is a felony that, "by its nature, involves a substantial risk of physical force against" the victim) and the definition of a crime of violence for career offender purposes under the sentencing guidelines:  an offense punishable by a year or more in prison that "involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2.  *See United States v. Coronado-Cervantes,* 154 F.3d 1242,1243(10th Cir.1998) (noted difference between language in 18 U.S.C. section 16 [" a substantial risk that physical force may be used"] and that in U.S.S.G. section 4B1.2 ["serious potential risk of physical injury"], but concluded decision under one should control the other, and followed its prior decision in analogous case of *United States v. Reyes-Castro,* 13 F.3d 377 (10th Cir.1993)).

There is no principled difference between the holding in *Ramsey v. INS* and the decision to be made in this case.  *See United States v. Coronado-Cervantes,* 154 F.3d 1242, 1243 (10th Cir.1998) (citing other circuits).  Therefore, we affirm the district court's use of the state conviction under section 800.04, Florida Statutes as a prior conviction for career offender purposes under U.S.S.G. section 4B1.1.

*Remaining Issues*

We have reviewed the remaining issues raised by Rutherford and find them to be without merit.

9

(4) The testimony of the forensic chemist for the DEA and Detective Darling adequately support the district court's factual finding that the drugs involved were crack cocaine, *see United States v. Smith,* 918 F.2d 1501, 1514 (11th Cir.1990) (district court's factual finding that controlled substance is cocaine base rather than cocaine powder is entitled to deference and can be reversed only if clearly erroneous), *cert. denied sub nom. Hicks v. United States,* 502 U.S. 849, 112 S.Ct. 151, 116 L.Ed.2d 117 (1991).

(5) The sentencing guidelines' definition of "crack" is not unconstitutionally vague, *see United States v. Williams,* 876 F.2d 1521, 1525 (11th Cir.1989) (distinction between "cocaine base" and "cocaine" is not vague because "cocaine base" refers to crack).

(6) Neither is the guidelines definition of "crack" so ambiguous that the district court should have disregarded the increased crack-cocaine penalties pursuant to the rule of lenity, *see United States v. Sloan,* 97 F.3d 1378, 1382 n. 8 (11th Cir.1996), *cert. denied,* 520 U.S. 1277, 117 S.Ct. 2459, 138 L.Ed.2d 216 (1997).

(7) When viewed in the context of the entire record, we find nothing improper about prosecutor's remarks at closing that the agents failed to take photographs of the transaction because their lives were endangered.

(8) We review Rutherford's assertion that the government's proof and the court's instructions impermissibly resulted in a constructive amendment to the indictment for plain error. Rutherford contends that because the indictment charged an offense involving cocaine, while the proof at trial and the district court's instructions to the jury referred to cocaine base (crack), there was a material variance from and constructive amendment to the indictment. "A violation of section 841(a)(1) occurs when the government proves beyond a reasonable doubt that a defendant possessess and intended to distribute a 'controlled substance,' regardless of whether that substance is cocaine or cocaine base." *See United States v. Williams,* 876 F.2d 1521, 1525 (11th Cir.1989); *see also United States v. Mejia,* 97 F.3d 1391, 1392-93 (11th Cir.1996) (to satisfy elements of sections 846 and 841(a)(1), government need not prove particular substance involved,

only that some controlled substance involved), *cert denied,* 519 U.S. 1141, 117 S.Ct. 1016, 136 L.Ed.2d 893 (1997). The nature of the controlled substance neither constitutes an element of the offense nor broadens the bases for conviction, but is relevant only for sentencing purposes. *See United States v. Cross,* 916 F.2d 622, 623 (11th Cir.1990), *cert. denied,* 499 U.S. 929, 111 S.Ct. 1331, 113 L.Ed.2d 263 (1991). There was no variance between the evidence at trial and those alleged in the indictment. Nor was there a constructive amendment because it cannot be said that the defendant was convicted of an offense other than that contained in the indictment.

AFFIRMED IN PART;  REVERSED IN PART;  VACATED IN PART;  AND REMANDED.