[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 17, 2006
THOMAS K. KAHN
CLERK

No. 04-16705

_____

D. C. Docket No. 04-00262-CR-T-30TGW

UNITED STATES OF AMERICA,

                                                Plaintiff-Appellee,

versus

WENDELL CORNELIUS YOUNG,

                                                Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 17, 2006)**

Before TJOFLAT and  KRAVITCH, Circuit Judges, and LAWSON\*, District Judge.

PER CURIAM:

_____

\* Honorable Hugh Lawson, United States District Judge for the Middle District of
Georgia, sitting by designation.

Wendell Young was convicted of three counts of possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B), and received a 240 month sentence. At trial, Young argued that the detectives who testified against him had misidentified him as the drug dealer in the three transactions giving rise to the charges against him. Similarly, Young argues on appeal that (1) the district court abused its discretion by denying his pretrial motion to compel the government to reveal the identity of a confidential informant who was the only person, other than the detectives, who could identify the drug seller; and (2) the district court abused its discretion by excluding evidence of Young's mistaken-identity defense, in violation of the Federal Rules of Evidence and Young's right to due process.

For the reasons set forth more fully below, we remand for an in camera hearing on the first issue, during which the district judge should question the informant to determine whether his or her testimony might be of assistance to defendant with his "it wasn't me" defense. If the district court decides that the informant's testimony would materially support Young's proposed misidentification defense, then his conviction should be vacated and he should be granted a new trial. We decline to address the second issue raised by appellant, based on this court's stated policy of not reaching issues that are not strictly required in order to resolve a case or controversy.

If the district court refuses to grant appellant a new trial, he may appeal the ruling and, in that appeal, raise his second issue. However, we cannot reach the merits of the second issue in the abstract, knowing that a district court decision on the first issue could make our holding of the second issue moot, and effectively an advisory opinion.

## I.

We begin in Section A by reciting the largely undisputed facts and procedural history of this case. In Section B, we turn to an analysis of the disclosure of the confidential informant's identity.

## A.

### (1) Pre-Trial Facts and Proceedings

At Young's trial, Hillsborough County Sheriff's Office Detective Leonette Wright-Garfield ("Garfield") testified that prior to February 24, 2004, a confidential source reported to her that a person named Tyrone, who was nicknamed "Gump," and who resided at 2508 32nd Street in Tampa, Florida, was distributing crack cocaine. Garfield further testified that on February 24, 2004, the confidential source contacted the supplier, via a cellular telephone number,[1] while Garfield listened to the

---

[1] Young was not listed as the subscriber for the phone number; an individual named Cindy Crawford ("Crawford") was later determined to be the subscriber. Crawford testified at trial that she had obtained the phone for Young for medical purposes, that it actually belonged to Young, and that his nickname was Gump.

conversation on speakerphone. The confidential source arranged to meet with the supplier later the same day. This conversation was not recorded.

The confidential source, Garfield and her partner, Hillsborough County Sheriff's Office Detective Lamont Akins ("Akins"), proceeded after dark on February 24, 2004, to a location on Walnut Street and Main Street in Tampa, Florida. After the detectives arrived at the meeting place, another individual arrived driving a maroon Buick.[2] The confidential source approached the Buick and spoke to the driver while the detectives remained in their car. The detectives could not hear this conversation, nor was the confidential source wearing recording equipment. After this conversation, Garfield left her vehicle and entered the Buick, sitting in the backseat. Garfield testified that she requested one-half ounce of crack cocaine, and the driver sold her a bag containing 13.7 grams of crack cocaine for $500. Akins never left his car and was unable to observe the suspect during this transaction. After the sale, Garfield and the driver discussed a future deal involving one and one-half ounces of crack cocaine, and he gave her his cellular telephone number, which matched the number previously used by the confidential informer to contact the supplier. Garfield later paid the confidential source in cash for his/her assistance, although Garfield testified at trial

_____

[2] The maroon Buick was not registered to Young, but to an individual named Thomas Brewer.

4

she could not recall the amount.

After this first drug deal, Garfield reviewed Florida driver's license photographs and determined that the person from whom she had purchased drugs was named Wendell Cornelius Young. This driver's license listed Young's address as 2713 32nd Street[3] in Tampa, Florida. Garfield also completed a "persons report" regarding the transaction, in which she identified the individual who sold her the crack cocaine as "Tyrone," and further described the individual as being in his "twenties."[4]

Garfield contacted the drug dealer later via his cellular telephone number and negotiated a second crack cocaine purchase. Accompanied again by Akins, she met the drug dealer at a park in Tampa. The suspect arrived at the park driving a gray Lincoln Continental, and Garfield entered his car, sitting in the rear passenger seat behind him. A three to five minute transaction took place in which the suspect sold Garfield a plastic bag containing forty grams of crack cocaine for $1400. Garfield

---

[3] Address variations recur in this case—Young believes this is significant; the government does not. Young asserts that since the original address the confidential source gave Garfield for "Tyrone" did not match Young's own on his license, then Young's mistaken identity defense is bolstered. The government counters that the remainder of its evidence is so inculpatory that this small difference in street number on the same street is insignificant. The Court declines to offer an opinion as to which position is correct, but rather, assumes this matter is one of many that will be further explored and clarified during the in camera examination of the confidential informant on remand.

[4] In February 2004, Young was thirty-three years old. By contrast, his brother Reginald, whom Young contends was in fact the drug dealer in these three transactions, was in his mid-twenties.

5

inspected and weighed the drugs, and the suspect counted the money. This transaction was not recorded, despite the presence of surveillance units in the area, because a detective failed to press the "record" button on his recording equipment.

After this second meeting, Garfield called the drug dealer again to negotiate the purchase of five ounces of crack cocaine. On the day of the transaction, March 11, 2004, the suspect and Garfield agreed by telephone that the purchase would consist of only two ounces of crack cocaine in exchange for $1800. When Detectives Garfield and Akins arrived at the same park to meet the suspect on March 11, 2004, Garfield made a recorded telephone call to the drug dealer to confirm the impending transaction. The suspect arrived in the same gray Lincoln Continental, and Akins moved to the back seat of the detectives' car. The suspect got out of his car and sat in the front seat of the detectives' car next to Garfield. Garfield then purchased 54.9 grams of crack cocaine for $1800; she weighed the drugs and the drug dealer counted the money. Afterwards, the suspect returned to his car and left the park.

Garfield testified that after the March 11, 2004, transaction, she had no further contact with the individual who had sold her crack cocaine. An arrest warrant was issued for Young on March 29, 2004;[5] on May 14, 2004, he was arrested. Garfield and

_____

[5] It is unclear from the record of this case exactly what probable cause the police used to obtain this warrant or from whom this probable cause came—the detectives, the confidential source or perhaps someplace else.

Akins were not present. After the arrest, Garfield went to offices for the Drug Enforcement Agency, listened to Young speak and identified his voice as the voice of the person she had spoken with during the three drug deals. No fingerprint evidence was ever introduced at trial.

### (2) Facts and Proceedings Surrounding Young's Motion to Compel Disclosure of Confidential Source's Identity

On July 16, 2004, Young filed a Motion to Compel Government to Disclose Identity of Confidential Informant, pursuant to Federal Rule of Criminal Procedure 12(b)(2). Young argued that he had a fundamental right to learn the identity of the confidential source, "so that he can adequately prepare his defense," because the individual had initiated, witnessed and participated in the transactions charged in the indictment. Young moved to compel disclosure based on his interpretation of Roviaro v. United States, 353 U.S. 53, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957), his Fifth Amendment right to due process and his Sixth Amendment right to confront the witnesses against him.

The United States responded that the district court should deny the motion to compel because Young had failed to establish a genuine necessity for disclosure of the confidential source's identity. The United States argued that the confidential source's involvement in the matter was minimal, and since Young had sold crack cocaine to

Garfield directly on each of the three occasions, Young's assertion that the confidential source was critical to his defense of misidentification was based on "mere conjecture."

At the hearing on the motion to compel, the government further argued that the disclosure was unwarranted because (1) the confidential source was an active source in the jurisdiction, so disclosure could jeopardize future investigations, and (2) the confidential source lived in the community where Young's crimes had taken place, so disclosure might expose the confidential source to untold dangers. Young again complained that the identity of the confidential source was vital to his defense because he/she was the only witness to many of the events surrounding the indictment. Citing the government's claimed interests in protecting the confidential informant's safety and ongoing investigations, the United States Magistrate Judge denied Young's motion to compel.

### (3) Facts and Proceedings Surrounding the Court's Exclusion of Evidence Relating to Young's Mistaken Identity Defense

Young's theory of defense at trial was that the United States had mistakenly identified him as the person who had supplied crack cocaine to Garfield in February and March of 2004. In an attempt to establish proof of this theory, Young sought to present evidence implicating his brother, Reginald, as the drug dealer in question.

Specifically, Young asked and attempted to ask a number of questions of Garfield, Idalia Hartley, an investigator for the Federal Public Defender's Office, and Johnny Jefferson, custodian of records for the Hillsborough County Sheriff's Office. The district court sustained a number of hearsay and relevancy objections by the United States to Young's proposed lines of questioning.[6] In response, Young's attorney decided he would not present a defense case-in-chief. Instead, in his closing argument, Young urged the jury to disbelieve Garfield and Akins's testimony based on poor eyewitness identification and inadequate police work.

The jury convicted Young on all three counts of the indictment.

**B.**

This Court reviews the denial of a motion to disclose the identity of a confidential informant under an abuse of discretion standard. United States v. Parikh, 858 F.2d 688, 696 (11th Cir. 1998). The government enjoys a limited privilege to withhold from disclosure the identity of its informants. Roviaro, 353 U.S. at 59-61, 77 S. Ct. at 627-28. However, if disclosure is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Id. at 60-61, 77 S. Ct. at 628. Explaining when the government's privilege to

---

[6] As previously mentioned, this Court will not examine whether the district court abused its discretion by excluding evidence of Young's mistaken identity defense.

withhold an identity must give way to a defendant's right to prepare his defense, the Court in <u>Roviaro</u> ordered a district court to engage in a balancing test, taking into account the particular circumstances of each case, the crime charged, possible defenses, and the potential significance of the informant's testimony. <u>Id.</u> at 62, 77 S. Ct. at 628-29; <u>see also</u> <u>United States v. Gutierrez</u>, 931 F.2d 1482, 1490 (11th Cir. 1991). The Eleventh Circuit has focused on three factors in the balancing test: (1) the extent of the informant's participation in the criminal activity, (2) the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant, and (3) the government's interest in nondisclosure. <u>United States v. Tenorio-Angel</u>, 756 F.2d 1505, 1509 (11th Cir. 1985).

## (1) Extent of the Informant's Participation

The Eleventh Circuit has recognized that informants may participate in criminal activities at various levels.

> At one extreme are those cases such as <u>Roviaro</u> itself, in which the informant played an active and crucial role in the events underlying a defendant's or litigant's potential criminal or civil liability. In these cases, disclosure and production of the informant is in all likelihood required to ensure a fair trial. At another extreme are those cases in which the informant was not an active participant, but rather a mere tipster. In those cases, disclosure of the informant's identity is not required by <u>Roviaro</u>. A third group of cases falls in between these two extremes. In these cases, there is a distinct possibility that the defendant might benefit from disclosure, but the Government claims a compelling need to protect its informant.

10

<u>Suarez v. United States</u>, 582 F.2d 1007, 1011 (5th Cir. 1978).[7]

In the present case, it is unclear to what extent the confidential informant participated in the three incidents charged in the indictment. The government has proffered he/she had no involvement in two of the incidents at all, and was not even a major participant in the one incident where he/she was present. However, because the informant was not questioned during an in camera proceeding, the only participation that has been clearly established is that he/she telephoned the drug dealer to arrange a crack cocaine purchase on behalf of the police, he/she then led the police to their initial meeting place with the suspect, and he/she had a private, unrecorded conversation with the suspect there. If this is the full extent of the confidential informant's participation, then it is possible the confidential source was a "mere tipster" whose participation was unsubstantial. <u>Id.</u> However, without an in camera examination, this cannot be determined conclusively. <u>See</u>, <u>e.g.</u>, <u>United States v. Panton</u>, 846 F.2d 1335, 1336 (11th Cir. 1988) ("The evidence in this case shows that to strike the balance in this case the district court must find out what the confidential informant's testimony would be.")

---

[7] The United States Court of Appeals for the Eleventh Circuit has adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, as its governing body of precedent. <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981). This body of precedent is binding unless and until overruled by the Eleventh Circuit *en banc*. <u>Id.</u>

## (2) Directness of the Relationship

The defendant bears the burden of demonstrating that the confidential source's testimony would significantly aid him in establishing an asserted defense. Gutierrez, 931 F.2d at 1491. Mere conjecture about the possible relevance of the informant's testimony is insufficient. Id. However, in United States v. Rutherford, 175 F.3d 899 (11th Cir. 1999), a panel of this court held that a district court should determine what the testimony of a confidential informant would be before dismissing a defendant's assertion that the testimony would materially support his defense. See id. at 902-03 ("It is apparent from these facts that there may indeed have been a misidentification in this case and that the informants were in a much better position to identify the man they took to the drug deal than the government agents who only met him there for the first time and identified him from a photograph.").

In this case, Young argues that the confidential source could have (1) confirmed that Reginald was the "Tyrone" with whom he/she had previously conducted crack cocaine transactions, (2) confirmed that the person with whom he/she met alone in the maroon Buick on February 24, 2004, was Reginald and not Wendell, (3) described the conversation that took place in the maroon Buick and (4) clarified the nature of his/her prior convictions as well as when and how much Garfield paid him/her for his/her assistance. Young also protests that he cannot tell the Court exactly what else the

confidential source might say, since he has never had the opportunity to interview the person, but that he/she could potentially give additional substantive testimony regarding Young's mistaken-identity defense.

Although Young has not yet conclusively established the direct relationship between his defense and the testimony sought, it would be premature to hold that no relationship exists. Id. Therefore, in this situation, similarly to the ones in Panton and Rutherford, an in camera hearing is appropriate to determine what, exactly, the confidential informant may know.

### (3) Government's Interest in Nondisclosure

Turning to the other side of the Roviaro balancing test, the Supreme Court has recognized that the United States has an interest, arising from its need to encourage cooperation with authorities, in withholding from disclosure the identity of confidential informants and sources. Roviaro, 353 U.S. at 59-61, 77 S. Ct. at 627-28. However, this governmental interest is not absolute, and must be balanced against the public interest in disclosing the identity of anyone whose testimony would be "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." Id. at 60-61, 77 S. Ct. at 628.

At the July 28, 2004, hearing on this issue, the United States asserted that the confidential source in this case was active in the jurisdiction, so disclosure could

13

jeopardize future investigations, and that the informant lived in the community where Young's crimes had taken place, so disclosure could potentially expose the confidential source to untold dangers. This Circuit has upheld district court decisions not to reveal the identity of informants under similar circumstances, noting,

> The necessity of anonymity of the informant for his personal safety is greater than the theoretical necessity possibly underlying refusals to disclose. . . . Disclosure of his identity would not only destroy any future usefulness but possibly jeopardize his life. We find no error in the district court's refusal to permit disclosure.

United States v. Toombs, 497 F.2d 88, 94 (5th Cir. 1974).

Once again, in this case, the district court did not have sufficient information to properly weigh the elements of the Roviaro balancing test. Although the Government made the bare assertion that the confidential informant's identity should be kept secret, no specific details regarding this point were ascertained.

Therefore, we remand for an in camera hearing on this issue as prescribed in Panton and Rutherford. This Court has faith in the ability of the district court to resolve the potential difficulty of determining whether the detectives have misidentified the defendant without revealing the informer's identity. See, e.g., Panton, 846 F.2d at 1337. The Court further recognizes that, should the district court determine the informant's testimony would materially support Young's

14

misidentification defense and vacate his convictions, the "government can then decide whether the interests served in resisting disclosure of the confidential informant[] are so great as to justify a dismissal of the charges against [the defendant], rather than disclose [his/her] identity in a retrial." Rutherford, 175 F.3d at 902-03.

**REMANDED**