[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 31, 2007
THOMAS K. KAHN
CLERK

No. 06-15802
Non-Argument Calendar
_____

D. C. Docket No. 06-20177-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NATASKA HOWARD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(October 31, 2007)**

Before TJOFLAT, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Nataska Howard appeals her convictions and concurrent 360-month

sentences for conspiracy to possess with intent to distribute crack cocaine, and possession with intent to distribute crack cocaine, violations of 21 U.S.C. §§ 846 and 841(a)(1).

## I. BACKGROUND

On March 7, 2006, a narcotics detective performing surveillance observed Howard standing alongside Khambriel Fluker on a street corner in the Little Haiti area of Miami. A vehicle drove up alongside the street corner and Fluker spoke with the driver. The driver then exited the car and walked with Fluker across the street in the vicinity of a trailer. The driver waited a short distance away from the trailer while Fluker went behind it to retrieve narcotics from a hidden stash. Fluker gave the narcotics to the driver in exchange for cash and the driver left the area. After Fluker returned to the corner where Howard remained, a second vehicle arrived, and Fluker again retrieved drugs from the stash and exchanged the drugs for cash in the same fashion. Sometime during the second exchange, the detective lost sight of Howard.

After the second vehicle departed, the detective observed the driver of a Ford Expedition pull up alongside Fluker, hand something to Fluker in exchange for Fluker's wad of cash, and park directly in front of where the detective was hidden. Fluker then placed the item(s) he received from the driver in the stash

2

where he had previously retrieved the narcotics. At that point, the detective signaled officers at the scene to arrest Fluker and the driver of the Expedition.

After the officers arrested Fluker, the detective observed Howard exit the Expedition from the driver's side whereupon she was arrested. A search of the Expedition yielded $642 in cash and numerous baggies containing crack cocaine, powder cocaine, and marijuana. Howard's fingerprint was found on one of the baggies. A search of the stash behind the trailer revealed crack cocaine, powder cocaine, and other drugs. The officers also stopped the two drivers who had previously received narcotics from Fluker. The packaging of the drugs retrieved from the two drivers was exactly the same as the packaging of the drugs discovered in the Expedition.

Prior to the jury trial, the government filed a notice of its intent to seek enhanced penalties due to Howard's prior convictions under 21 U.S.C. § 851. The jury found Howard guilty of conspiracy to possess with intent to distribute cocaine base and guilty of possession with intent to distribute cocaine base. The district court sentenced Howard to concurrent 360-month terms of imprisonment, to be followed by concurrent 8-year terms of supervised release, and imposed the customary assessment. The 360-month terms of imprisonment reflected the bottom of the applicable guideline range of 360 months to life imprisonment.

3

## II. DISCUSSION

### A. Sufficiency of the Evidence

On appeal, Howard argues first that the evidence was insufficient to support her conspiracy conviction. The government, she contends, did not show what was said between her and Fluker on the day of her arrest, and that even if she handed him drugs in exchange for money, such a one-time transaction does not support a conspiracy charge under the law of this Court.

"We review the sufficiency of the evidence *de novo.*" *United States v. Garcia*, 405 F.3d 1260, 1269 (11th Cir. 2005) (per curiam). "[W]e must view the evidence in the light most favorable to the government and decide whether a reasonable juror could have reached a conclusion of guilt beyond a reasonable doubt." *United States v. Faust*, 456 F.3d 1342, 1345 (11th Cir.), *cert. denied*, — U.S. —, 127 S. Ct. 615, 166 L. Ed. 2d 156 (2006).

To convict a defendant of conspiracy to possess cocaine with intent to distribute, "the government must prove beyond a reasonable doubt that (1) an illegal agreement existed; (2) the defendant knew of it; and (3) the defendant, with knowledge, voluntarily joined it." *United States v. Hernandez*, 433 F.3d 1328, 1333 (11th Cir. 2005) (quoting *United States v. McDowell,* 250 F.3d 1354, 1365 (11th Cir. 2001)), *cert. denied*, 547 U.S. 1047, 126 S. Ct. 1635, 164 L. Ed. 2d 346

(2006). Participation in a conspiracy may be inferred from the circumstances, and "[a]lthough mere presence at the scene is insufficient to support a conspiracy conviction, presence nonetheless is a probative factor which the jury may consider in determining whether a defendant was a knowing and intentional participant in a criminal scheme." *Id.* (quoting *McDowell*, 250 F.3d at 1365). However, a single drug transaction involving "no prior or contemporaneous understanding" between the buyer and seller is insufficient to support a conspiracy conviction. *United States v. Beasley*, 2 F.3d 1551, 1560 (11th Cir. 1993) (quoting *United States v. Burroughs*, 830 F.2d 1574, 1581 (11th Cir.1987)). Further, as the jury may "choose among reasonable constructions of the evidence," *Hernandez*, 433 F.3d at 1334, the jury is "free to disbelieve and disregard [the dealer's] testimony that [the defendant] was not involved in the drug transaction and did not serve as protection for him." *Id.* (first alteration in original) (quoting *United States v. Diaz-Boyzo*, 432 F.3d 1264, 1270 (11th Cir. 2005)).

Howard's argument is without merit. In light of the testimony evidencing: (1) Howard's observation of the first transaction; (2) Howard's disappearance during the second transaction; (3) Howard's drive-by exchange with Fluker; (4) the large amount of money and drugs found within the Expedition driven by Howard; (5) Howard's fingerprint on a baggie of drugs within the Expedition; and (6) the

5

packaging of the drugs in the Expedition matching the packaging of the intercepted buyers' drugs, the government established more than just a buyer-seller relationship between Fluker and Howard. The evidence was sufficient for the jury to infer from the circumstances that Howard participated in a conspiracy.

Howard next argues that the evidence was insufficient to support the possession charge because she did not own the Ford Expedition in which the drugs were found, the drugs were not in plain view, and the government presented no evidence as to when her fingerprint print was placed on a bag containing drugs that was found inside the vehicle. To convict a defendant of possession of a controlled substance with intent to distribute under 21 U.S.C. § 841(a)(1), the government must prove beyond a reasonable doubt "that a defendant knowingly possessed the controlled substance with the intent to distribute it." *Hernandez*, 433 F.3d at 1333 (quoting *United States v. Leonard*, 138 F.3d 906, 908 (11th Cir. 1998)). Possession may be actual or constructive. *Id*. "'Constructive possession exists when a defendant has ownership, dominion, or control over an object itself or dominion or control over the premises or the vehicle in which the object is concealed.'" *Id.* (quoting *Leonard*, 138 F.3d at 908). "Intent to distribute may be inferred from the amount of [the drug] involved." *Id.* (alteration in original) (quoting *United States v. Sarmiento,* 744 F.2d 755, 761 (11th Cir.1984)).

6

Again, Howard's argument fails. The government submitted that Howard was arrested after exiting the Expedition and, as such, she was the last individual with dominion and control over the vehicle before the drugs were discovered inside it. An officer testified that he heard Howard instruct the alleged owner of the vehicle to not let anyone into it. A search of the Expedition uncovered 4.9 grams of cocaine base with 85% purity, 10.7 grams of cocaine hydrochloride with 53% purity and 23.7 grams of marijuana. These drugs were in individual baggies or packages and, as mentioned above, one of the baggies had Howard's fingerprint on it. The evidence connecting Howard to Fluker and the drugs found within the Expedition was sufficient to support her conviction of possession.

## B. Career Offender under U.S.S.G. § 4B1.1(a)

Next, Howard argues that the district court erred in classifying her as a career offender under U.S.S.G § 4B1.1(a) because her prior state conviction for improper exhibition of a firearm on or near school property was not a crime of violence within U.S.S.G. § 4B1.2(a). The district court's determination that a prior conviction qualifies as a crime of violence is a question of law that we review *de novo*. *United States v. Gibson*, 434 F.3d 1234, 1243 (11th Cir.), *cert. denied*, — U.S. —, 126 S. Ct. 2911, 165 L. Ed. 2d 931 (2006).

A defendant qualifies as a career offender if she was at least 18 years of age

at the time of the commission of the instant offense, the instant offense was a crime

of violence or a controlled substance offense, and she has at least two prior

convictions for crimes of violence or controlled substance offenses.  U.S.S.G.

§ 4B1.1(a).  A crime of violence is any offense punishable by a term of

imprisonment exceeding one year that "(1) has as an element the use, attempted

use, or threatened use of physical force against the person of another, or (2) is

burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise

involves conduct that presents a serious potential risk of physical injury to

another."  U.S.S.G. § 4B1.2(a).  The application notes further instruct that, in

addition to the enumerated crimes of violence, "other offenses are included if . . .

(B) the conduct set forth (i.e., expressly charged) in the count of which the

defendant was convicted . . . presented a serious potential risk of physical injury to

another."  *Id.* at cmt. (n.1).[1]  The application notes also provide that in deciding

whether a prior offense is a crime of violence, "the offense of conviction (i.e., the

conduct of which the defendant was convicted) is the focus of the inquiry."  *Id.* at

cmt. (n.2).  We have held that "a court should look only to the elements of the

convicted offense, and not the conduct underlying the conviction."  *United States

v. Rutherford*, 175 F.3d 899, 905 (11th Cir. 1999).  "[A] district court . . . may

_____

[1]We treat the guidelines commentary as authoritative.  *United States v. Searcy*, 418 F.3d 1193, 1195 n.3 (11th Cir. 2005).

inquire into the conduct surrounding a conviction if ambiguities in the judgment make the crime of violence determination impossible from the face of the judgment itself." *United States v. Spell*, 44 F.3d 936, 939 (11th Cir. 1995).

In *United States v. Searcy*, 418 F.3d 1193 (11th Cir. 2005), we interpreted § 4B1.2(a) as providing two alternative approaches for classifying an offense as a crime of violence. *Id.* at 1196. "The first approach is to determine whether the use, attempted use or threatened use of physical force against another is an element of [the offense]." *Id.* The second is to determine "whether [the offense] involves conduct that, by its nature, presents a serious potential risk of physical injury to another." *Id.* In *United States v. McGill*, 450 F.3d 1276 (11th Cir. 2006), we noted that the second definition is broadly interpreted "to include crimes that do not fit neatly into a category of hostile, aggressive acts." *Id.* at 1280. We further noted that "the specific language of § 4B1.2(a)(2) concerns the potential *risk* of physical injury rather than the actual *use* of force against another." *Id.* at 1281.

At the time of Howard's offense, Fla. Stat. § 790.115(1) provided:

(1) A person who exhibits any sword, sword cane, firearm, electric weapon or device, destructive device, or other weapon, in the presence of one or more persons in a rude, careless, angry, or threatening manner and not in lawful self-defense, on the grounds or facilities of any school, school bus, or school bus stop, or within 1,000 feet of the real property that comprises a public or private elementary school, middle school, or secondary school, during school hours or during the time of a sanctioned school activity, commits a felony of the third degree, punishable as provided in s. 775.082,

9

s. 775.083, or s. 775.084. This subsection does not apply to the exhibition of a firearm or weapon or private real property within 1,000 feet of a school by the owner of such property or by a person whose presence on such property has been authorized, licensed, or invited by the owner.

Fla. Stat. § 790.115(1) (1997).

In the present case, to meet the first definition the statute of conviction must have as an element "the use, attempted use, or threatened use of physical force against another." The Florida statute, however, proscribes conduct that includes the "rude" or "careless" exhibition of a weapon, which is not conduct that necessarily involves the use, attempted use, or threatened use of force. As a result, Howard's prior conviction does not fit cleanly within the first definition of a crime of violence.

As for the second definition, i.e., whether the offense involves "conduct that presents a serious potential risk of physical injury to another," Howard argues that Fla. Stat. § 790.115(1) prohibits some conduct that does not present a serious potential risk of injury and, therefore, her conviction under that statute cannot constitute a violent crime for career offender purposes.

Howard fails to understand our violent crime inquiry. Even if Howard successfully showed that § 790.115(1) broadly encompassed some conduct that constituted a violent crime, and some that did not, the inquiry would not end there. Under *Spell*, we look to whether the language of the judgment of conviction makes

10

clear that the offense constituted a crime of violence and, if it does not so clarify, the court looks behind the judgment of conviction and examines "easily produced and evaluated court documents" to facilitate the determination. *Spell*, 44 F.3d at 939 (determining that a Florida statute encompassed some conduct that constituted the violent crime of burglary, and some that did not; finding the judgment of conviction was ambiguous; remanding and ordering the district court to examine the defendant's plea agreement); *see also United States v. Krawczak*, 331 F.3d 1302, 1306 (11th Cir. 2003) ("[T]he ability to look behind a state conviction in federal sentencing . . . . is limited to instances where the judgment of conviction and the statute are ambiguous.").

In this case, even if we were to assume that the statute and judgment of conviction are ambiguous, Howard would still be unable to show that her previous conviction was not a violent crime. The presentence investigative report ("PSI") provides that Howard was at an elementary school, pulled out a firearm, and began firing several rounds at an unknown male who had stolen her bicycle. (PSI ¶ 33.) She chased the unknown male across the physical education field while discharging the firearm. *Id*. Because Howard failed to object to the facts set forth in the PSI, she admitted them. *United States v. Bennett*, 472 F.3d 825, 833-34 (11th Cir. 2006) (holding that where defendant failed to object to facts in PSI

relating to prior conviction, the failure to object constituted an admission); *see also United States v. Glasco*, 223 Fed. Appx. 951, 956 (11th Cir. 2007) (same); *United States v. Carlos-Santos*, 164 Fed. Appx. 938, 939 (11th Cir. 2006) (same).

In light of Howard's admission of the facts underlying her previous conviction, i.e., repeatedly firing a firearm at an individual on school grounds, she has no basis to contend that it was not a crime of violence for career offender purposes.[2]

## C.  Unreasonable Sentence

Lastly, Howard argues that her concurrent 360-month sentences are unreasonable and disproportionate to the crimes at issue.  She contends that without the 21 U.S.C. § 851 statutory enhancement and the career offender enhancement, the guideline range would have been 78-97 months, and that the resulting 22-year increase in the guideline range is unreasonable under the 18 U.S.C. § 3553(a) factors.  She further argues that the district court's statements indicate that the court considered only the guideline range and not the § 3553(a) factors.

We review the final sentence imposed by the district court for

---

[2]Consequently, we do not reach the question of whether Fla. Stat. 790.115(1) and Howard's judgment of conviction are ambiguous.

reasonableness. *United States v. Talley*, 431 F.3d 784, 785 (11th Cir. 2005) (per curiam). Reasonableness review is deferential and "the party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." *Id.* at 788. We review only the final sentence for reasonableness rather than each individual decision made during the sentencing process. *United States v. Winingear*, 422 F.3d 1241, 1245 (11th Cir. 2005) (per curiam). A sentence within the applicable guideline range has an expectation of reasonableness. *Talley*, 431 F.3d at 788.[3] Relevant to the reasonableness inquiry is a comparison of the sentence actually imposed to the maximum sentence that could have been imposed under the guidelines. *See United States v. Martinez*, 434 F.3d 1318, 1322 (11th Cir.), *cert. denied*, — U.S. —, 126 S. Ct. 2946, 165 L. Ed. 2d 976 (2006) (concluding that a sentence almost one-third the length of the statutory maximum sentence was reasonable). "[W]e will remand for resentencing if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v.*

---

[3]In *Rita v. United States*, — U.S. —, 127 S. Ct. 2456, 2467-68, 168 L. Ed. 2d 203 (2007), the Supreme Court upheld other circuits' decisions affording a presumption of reasonableness to sentences within the properly calculated Guidelines range; however, this circuit does not apply such a presumption. *United States v. Campbell*, 491 F.3d 1306, 1313 (11th Cir. 2007).

*Williams*, 456 F.3d 1353, 1363 (11th Cir. 2006), *cert. dismissed*, — U.S. —, 127 S. Ct. 3040, — L. Ed. 2d — (2007). The district court, however, is not required "to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." *United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005).

The factors in 18 U.S.C. § 3553(a) include the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

*Talley*, 431 F.3d at 786 (citing 18 U.S.C. § 3553(a)).

In this case, district court correctly calculated the guideline range and heard arguments from both parties on the appropriate factors to consider in sentencing Howard. The court explained that it was aware it could sentence outside the guidelines, but found that the defense had not sufficiently demonstrated that a within-range sentence was "unreasonable under the circumstances of this case." The court further stated that it had considered the parties' statements, the PSI, the advisory guidelines, and the statutory factors, and was imposing the sentences in

14

light of "the severity of the guideline imprisonment range and to provide sufficient punishment." As a result, Howard has failed to demonstrate that her concurrent 360-month sentences, which were at the lowest end of the applicable guideline imprisonment range (360 months to life), were unreasonable.

Accordingly, we affirm.

**AFFIRMED.**